**SO ORDERED.**

**SIGNED this 31st day of March, 2015.**




Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION ONLY

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

IN RE:

DONITA M. BIBBS,          Case No. 14-10847
                            Chapter 13
     Debtor.

**ORDER OVERRULING OBJECTION TO CONFIRMATION OF PLAN**

To determine the meaning of the term "purchase money security interest" as that term is used in the hanging paragraph after 11 U.S.C. § 1325(a)(9)(*), courts look look first to that term's familiar definition in the Uniform Commercial Code.[1] As enacted in Kansas, KAN. STAT. ANN. § 84-9-103 provides that a security interest attains

---

[1] *In re Ford*, 387 B.R. 827, 829 (Bankr. D. Kan. 2008), *aff'd* 574 F.3d 1279 (10th Cir. 2009)(direct appeal).

1

attains purchase-money status to the extent the goods in question are "purchase-money collateral."[2] "Purchase-money collateral," in turn, includes goods that secure a "purchase-money obligation"[3] and a "purchase-money obligation" is one for "value given to enable the debtor to acquire rights in . . . the collateral if the value is in fact so used."[4] Section 1325(a)(9)(*) provides that if a debtor incurred a debt to purchase a motor vehicle for personal use within 910 days of the date of filing and granted a purchase-money security interest to secure repayment of the loan, the bifurcation provisions of § 506 no longer apply to that debt, meaning that the creditor's allowed claim must be paid in full without regard to the collateral's value.

In the present case, Donita Bibbs borrowed money to buy her Toyota on October 13, 2011 and granted K-State Federal Credit Union a purchase money security interest in the car. On October 23, 2012, she executed a new note that modified the old debt by permitting her to make bi-weekly payments rather than monthly payments. She filed this case on April 21, 2014, 921 days after first incurring the debt, but KSFCU claims that because of her subsequent refinance during the 910-day counting period, she cannot bifurcated its claim. Ms. Bibbs "incurred" the purchase-money debt more than 910 days prior to filing her case. KSFCU's claim is therefore not entitled to "910" status and its objection to confirmation is overruled.

---

[2] KAN. STAT. ANN. § 84-9-103(b) (2014 Supp.).
[3] KAN. STAT. ANN. § 84-9-103(a)(1) (2014 Supp.).
[4] KAN. STAT. ANN. § 84-9-103(a)(2) (2014 Supp.).

2

Jurisdiction

A proceeding for confirmation of a plan is a core proceeding over which this Court may exercise jurisdiction.[5]

Facts

Ms. Bibbs executed a Loanliner agreement with KSFCU on October 13, 2011. She borrowed $6,852, $6,000 of which was directly disbursed to a dealer to allow Ms. Bibbs to buy a 2002 Toyota Camry. The purpose of the loan is noted on the face of the instrument—"purchase vehicle." She agreed to make $250 monthly payments over 39 months. The balance of the loan funds paid the premium for GAP insurance, car titling fees, and a $500 deposit into her account for personal use. On October 23, 2012, Ms. Bibbs signed another Loanliner agreement with KSFCU to refinance $6,266.44, payable at the same interest rate (18%), but in 65 bi-weekly $125 payments rather than $250 monthly payments. The Camry remained the only collateral for this loan and Ms. Bibbs received no additional funds under this agreement. Ms. Bibbs filed this case on April 21, 2014, within 910 days of the latter agreement, but 921 days after the first one.

In her first plan, Ms. Bibbs proposed to treat KSFCU's claim as a "910" claim and to pay KSFCU in full.[6] The chapter 13 trustee objected, noting that the loan was

---

[5] 28 U.S.C. § 157(b)(1) and (b)(2)(L) and § 1334. The chapter 13 trustee and secured car creditor submit this matter to the Court on stipulation of facts (Dkt. 40) and briefs (Dkt. 41 and 42). Chapter 13 trustee Laurie B. Williams appears by counsel Karin N. Amyx and K-State Federal Credit Union appears by its attorney Martha A. Peterson.

[6] Dkt. 12.

3

was not a purchase money loan, and that debtor improperly classified and paid the claim as a 910 car loan pursuant to the hanging paragraph of § 1325(a)(9)(*).[7] Ms. Bibbs amended her plan to provide for the traditional treatment of a non-910 car loan, bifurcating KSFCU's claim between a $3,000 allowed secured claim, leaving the balance unsecured.[8] KSFCU objects, claiming that the original loan was a purchase money loan and that by refinancing the debt within the 910 day window, it should be entitled to fully secured treatment under the hanging paragraph.[9] The Trustee responded that the original Loanliner agreement was outside the 910 day period and this loan started the 910 counting period for the purpose of 910 car status.[10]

Analysis

A glance at KAN. STAT. ANN. § 84-9-103 tells us that a "purchase-money obligation" is one the borrower incurs for value given to "enable the debtor to acquire rights in" the collateral and that "purchase-money collateral" consists of goods that secure a purchase-money obligation.[11] In simple terms, if a lender loans money to a debtor to purchase a car and that loan is secured by the car, the security interest is a purchase money security interest [PMSI].

Congress enacted § 1325(a)(9)(*) in 2005.[12] It requires debtors who had borrowed

---

[7] Dkt. 22.
[8] Dkt. 27.
[9] Dkt. 30. KSFCU did not dispute the debtor's $3,000 value of the car in its objection to confirmation.
[10] Dkt. 32.
[11] KAN. STAT. ANN. § 84-9-103(a) (2014 Supp.).
[12] This cited paragraph immediately follows § 1325(a)(9) and is commonly referred

4

borrowed money to purchase a vehicle for personal, family or household use within 910 days of the petition date to pay their car loan in full, regardless of the car's value. It accomplished this by making the provisions of § 506, which separates ordinary secured claims into allowed secured and unsecured claims according to the collateral's value, inapplicable to these "recent" purchase-money loans.[13] The so-called hanging paragraph states—

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor....[14]

In order for the loan to qualify for this favorable treatment in chapter 13, it has to have been "incurred" within the 910 day look-back.

KSFCU argues that when Ms. Bibbs signed the refinancing note in 2012, she "incurred" a purchase-money obligation within the look-back period. That she incurred an "obligation" within 910 days of filing is accurate; that the obligation was for "purchase-money" is not. She incurred a "purchase-money obligation" in October of 2011, 921 days before she filed this case. Nothing that happened in October of 2012 altered the effect of the PMSI she granted in 2011. KAN. STAT. ANN. § 84-9-103(f) codifies the "dual status rule" by providing that the renewal or

---

to as the "hanging paragraph" because it is unnumbered and modifies § 1325(a)(5).
[13] *In re Ford*, 574 F.3d 1279, 1281.
[14] 11 U.S.C. § 1325(a)(9)(*), emphasis added.

5

refinancing of a purchase money obligation does not cause the PMSI to lose its status.[15] The very modest change in these parties' relationship effected by the second note in no way affected the purchase-money status that was created by the first note and security agreement. Ms. Bibbs "incurred" the purchase-money obligation when she bought the car, not when she signed the 2012 refinance note and § 1325(a)(9)(*) pegs the 910-day counting period to when "the debt was incurred."

No bankruptcy court has sided with KSFCU's position and at least two have held to the contrary. In *In re Naumann*, the court considered whether the nature of the refinanced obligation had changed from the original one enough to consider the second note a novation as a matter of Illinois law.[16] The court there noted that the loan refinancing date was not the controlling date for determining whether to apply the hanging paragraph. Rather, the date upon which the obligation is "incurred," as both the UCC and Bankruptcy Code provisions say, is the date of the original purchase-money loan.[17] In *In re Cunningham*, the court looked to the definitions of "purchase-money obligation" and "purchase-money security interest" in North Carolina's version of UCC § 9-103 to conclude that the date the purchase-money loan is made is the controlling date for determining when the 910 day look-back period

---

[15] KAN. STAT. ANN. § 84-9-103(f)(3) (2014 Supp.). Likewise, the dual status doctrine provides that PMSI status is not lost by the fact the car secured the full loan obligation, including loan proceeds that were used for items other than the car purchase money obligation. *See* § 84-9-103(f)(1).
[16] *In re Naumann*, 2010 WL 2293477 (Bankr. S.D. Ill. June 8, 2010).
[17] *Id.* at *4, n. 5.

6

period begins, not the date of refinancing.[18] I agree with the reasoning in *Naumann* and *Cunningham* and conclude that Kansas's version of § 9-103 requires me to reach reach the same conclusion here. Because Ms. Bibbs incurred the purchase money obligation more than 910 days before filing her bankruptcy petition she is not required required to treat KSFCU as a 910-car creditor under § 1325(a)(9)(*) and may pay the the $3,000 value of the car as proposed in her amended plan.

KSFCU's objection to Donita Bibbs' amended chapter 13 plan is OVERRULED. The trustee is directed to submit a confirmation order accordingly.

# # #

---

[18] *In re Cunningham*, 2012 WL 1604686 at *3 (Bankr. W.D. N.C. May 8, 2012).